Good morning. May it please the court, Sandra Lopez on behalf of Isaac Gaston. Mr. Gaston's conviction must be reversed based on violations of equal protection. The totality of the relevant facts that were before the state courts show that, including the comparison analysis of Mr. R to actual jurors, convincingly refutes each of the prosecutor's non-racial justifications for his preemptory challenges to the African-American jurors. The issue in this Batson case is the third prong of the Batson elements. Whether the California courts and the district courts erred in concluding that Mr. Gaston failed to meet his ultimate burden of establishing that the prosecutor's challenges were motivated by purposeful racial discrimination. What exactly is the concern here? I realize there's some Batson cases that are just awful, and it's just really clear. But in this case, you had the two African-Americans who were stricken, one that was not, one that the prosecution wanted to keep on, and then you struck him. Each of the judge promptly inquired what the reasoning was. The one reason you got a woman who had averted eye contact, she had some strong feelings about other issues. The other one had run-ins with the police before on the comparative analysis. The jurors' background compared with the other one is almost wholly different. So I'm sympathetic to you. I just don't see facts here that allow me to side with you unless you can help me on that. And just to be clear, I wasn't the trial attorney. It's a habeas case. And first of all, it's clear under Ninth Circuit President and Supreme Court President that even the striking of one juror is sufficient for a Batson challenge. And simply because the reason for it is discriminatory. And that's the problem I'm having with it, is that the judge clearly understood what he had to do with Batson, went through and asked the prosecutor, why did you strike this juror? He gave a non-discriminatory reason in both cases. The other African-American juror, which he wanted to keep, the defense struck. So I'm just, this is not a typical Batson case. I think you'd have to agree. Well, I think actually in this case, to me, it's somewhat clear. But the appellate's courts have to look at the totality of the facts that were before the state court. And the totality of the facts is the totality of the Wadeer transcript. And looking specifically at Mr. R in this case, that juror was stricken for two reasons. The first reason, it appears that the attorney general appears to concede, wasn't a valid reason. It was something that's applicable to all jurors. Basically, he answered in the negative to the question, do you think simply because Mr. Gaston was charged with a crime, he's more likely guilty than not? The answer would be no. But he also said, if I recall the facts correctly, when he was in college, he was pulled over by police. He thought it was a discriminatory motive. He and his friends were roughed up. And he had a, in quotes, bad experience with police, in quotes. And the prosecutor was worried that he had some strong anti-police feelings. That's a perfectly legitimate basis for striking a juror, is it not, for the prosecution? Correct. And that's why I said the issue in this case is prong number three. I think Mr. Gaston concedes the fact that there weren't race-neutral reasons given in prong two. But looking at, and I brought up the first reason because the courts have held that when there is a pretextual reason, one pretextual reason, it gives an inference that the second reason may have also been pretextual. And in this case, doing a comparative analysis, Your Honor is correct. Mr. R indicated that back in his college days, which the court considered to be ancient history, he was stopped on a sidewalk and put on the floor. And he said, but look, I'm going to look at the circumstances on an individual basis because I know a lot of police officers. My father is LAPD. My brother is a forest ranger. And I'm going to look at the circumstances on an individual basis. That's what he said. May I ask a question on the standard? There could be arguments made on either side that it was a pretextual answer or that it was not, that it was a legitimate response. And it should carry the day. But it seems to me, and this really is a question, doesn't the standard dictate the result here? That is, we are required to give a deferential review to a finding by the state court and the appellate court. They found. So are we in the business, is that standard incorrect? Or are we in the business of reassessing that as a factual finding? Well, Your Honor, it's correct. There is a deferential standard because it is a habeas case. But the courts have repeatedly held that it's not an impossible burden. And the courts have repeatedly found backs and challenges. You're absolutely right. We can reach a conclusion that both the state court and the appellate court just simply got it totally wrong, an unreasonable determination of the facts. But unless we can reach that level, where is there latitude for us to reverse this or to say as a matter of law that that particular reason given is a protectual response? I think it is the unreasonable basis, Your Honor. But Kessler, the Ninth Circuit en bas decision, indicated that the appellate courts do have a duty to do a comparative analysis. And the state courts do as well. In this case, they just didn't. And looking at the sidewalk issue with Mr. R compared to juror number two, which was actually seated, he indicated two circumstances where he was treated unfairly by police officers. He was not only put on the sidewalk, but he was handcuffed, weapons were drawn. And he indicated that his first situation back in his college days was typical of a LAPD. And he indicated that in his belief because of these situations that he has, naturally he would have, he said, never really had a positive experience with the LAPD. And naturally, that creates a certain feeling towards them. But he said he could put it aside and be fair, and he was just relating his story. Correct. Because he was asked. Just like Mr. R. Well, Mr. R was a little more equivocal in whether or not he could set aside his feelings. At least that was the finding of the state courts. And unless we can determine that that finding was unreasonable, we're stuck with that. Well, I respectfully disagree, Your Honor, because the courts didn't do the comparative analysis. And if they would have, they would have seen that juror number two stated, this is an institutionalized situation with an LAPD. But with respect, counsel, as all of us have indicated here, this is an AEDPA review. We have to give deference to the state courts unless it is unreasonable. Now, I realize that you have a perspective on it. You think that the comparative analysis yields a different result. If I agree with you, fine. But what I don't understand is why what the trial court and the state court of appeal did here was unreasonable under AEDPA. It's a highly deferential standard. And as I said before, this is not a typical Batson case. It just is not. So under the circumstances, I don't see, unless you can show me the contract, I don't see how you meet the AEDPA standard. How can we reverse, given the fact  the court of appeals went through the analysis, what is so patently unreasonable about their determination, other than the fact that you disagree with them? Well, one, Your Honor, there was no comparative analysis done by the state courts. And that should have been done. I said, if we do comparative analysis and you look at it. And that also goes to the unreasonableness, Your Honor. And also, looking at the two jurors, looking at what they said, it's clear that the juror that wasn't stricken was far more. Well, Judge Rawlinson said that that's in the eye of the beholder, the jurors. And what they said, just because they said it in one part, doesn't mean that we don't have to take into account what they said in another part, and that the prosecutor had a perfectly legitimate, non-pretextual reason to strike the jurors. And Your Honor, if I may, I have 20 seconds left, if I could. The jurors, looking at those two jurors, it appears that the seated juror had far more problems with LAPD than Mr. R. And even if they were equal, that is a comparative analysis. And if the prosecutor was so concerned with Mr. R's statements, then he should have stricken juror number two, and he didn't. And that shows that it was, in fact, a pretext. All right, counsel. Thank you. We understand your argument. We'll hear from the stage. Good morning, Your Honors. California Deputy Attorney General Douglas Wilson, appearing for respondent warden. I think Judge Smith, is correct. This isn't a typical Batson case. We don't have a big litany of situations where we can look at the record and say, yeah, this prosecutor, the reasons he's given are inherently not credible. Do you agree with opposing counsel that no comparative analysis was done at the state level? Yes, Your Honor, absolutely. There was no official comparative analysis. There was no official comparative analysis? Not, no, Your Honor. I can't glean anything from the record. So the answer is no, there was no comparative analysis. Yes, Your Honor. And again, this is an older case. This is pre-Johnson, pre-Miller-Ale, before we were doing comparative analysis. I even wrote the brief a year ago where comparative analysis was still kind of up in the air. And where does that leave us, where the state courts did not perform a comparative analysis? This court can and should look at the entire record to see the reasonableness of the Court of Appeals and the state and the trial court's resolution of the claim. The Court of Appeal looked specifically at the race-neutral reasons and compared the record and said, yeah, that's something that can be credited. And the trial judge was correct in crediting it. For example, like the second African-American juror, Mr. R, who was removed from the jury, or the second one removed by the prosecutor, he gave this example of how he'd been roughly treated by the LAPD years earlier. And he said, I would be open to a defense theory, not even knowing what the case was about yet, that it was similar along the lines of the defense theory that was going to be presented in this case, that actually had been presented in the first trial that ended in a hung jury, where the defense was the LAPD lied. And there was some sort of impropriety by the LAPD. So he came out and said, I would be open to something like that. And so that would certainly give the prosecutor pause. Going back to the little help, we were talking about the reasons pro and con on the factual analysis. Help me a little bit, what is the present state of Ninth Circuit law on whether failure to perform the comparative analysis equals an unreasonable determination of the facts? In other words, what's the state presently of our precedents? I think the state of the Ninth Circuit precedent is that it's not an automatic finding that Still look at the total body of facts. Correct. And still look at the Decide whether the state court made an obvious, unreasonable determination. Correct. And this court, and I believe the US Supreme Court has used the term, it's a useful tool. And as we've seen in more recent cases, a comparative analysis has been done in cases where there hadn't been one done in the state court, especially in California, because we weren't doing them. The California Supreme Court had said we shouldn't be doing them. And then after Johnson and Miller, L, the law has recently evolved. And so now we can look back. We can say, looking at this totality of all the evidence or of what occurred at voir dire, yes, the ultimate resolution was reasonable or unreasonable. Are Johnson and Miller retroactive in their application? Yes. Well, the Ninth Circuit has found in, I'm sorry, I can't remember the name of the case, but I've fairly recently found that Teague does not bar the application of the comparative analysis. Counsel, where in the record did Juror R say he would be open to a defense that the police lied? He said he would be open to a defense that, with respect to some type of rough treatment. Right, he didn't say he would be open to a defense that the police lied. He said he would have an open mind to hear anything. Correct, correct, Juror R. He said he would be open, he would have an open, he would be open to. He would have an open mind. Within the context of discussing police impropriety. And the California Court of Appeal equated that to a statement, or equated that to just general police impropriety, of police lying and police. Yeah, but I just wanted the record to be clear, because you put those words in his mouth, and that's not what he said. He said. I apologize, Your Honor. It would give him an open mind to hear anything that you know was relative to being treated roughly. Right, and I should have been more clear that it's the California Court of Appeal that expanded it and said that it flows more into the concept of police misconduct. With respect to the other reason that Juror R. was removed, the respondent does not concede that it was pretextual. During the voir dire, now the judge in this case did all of the voir dire himself. He did not allow the attorneys to ask any questions. And during sidebar, this came out that the prosecutor really wasn't happy with one of the questions that the judge had asked Mr. R. And he was actually the only juror he had asked this question to, whether or not, what did he say? He said that, did he believe that it was more likely than not that someone's been charged with a crime that they're guilty? Well, I think your average person would say, yeah, it is more likely than not that they're guilty. But that has no place really in a criminal courtroom setting, because we're dealing with the standard of proof beyond a reasonable doubt. So that kind of came from a frustration of the prosecution with the judge for asking that question. And then Mr. R said, no, I don't think it's more likely than not. So it kind of gives the impression that, well, maybe 50% of the time, people are wrongly charged, wrongly arrested, wrongly convicted. And that kind of dovetailed into his other answer about would be open to being treated roughly by the police or a defense of police impropriety. Getting back to the comparative analysis, we shouldn't be looking just at Mr. R and juror number who was seen as number two or was identified as number 13. He was also identified in the record as number 1575. We need to look at the entire record to do a comparative analysis. And in this case, the prosecutor used eight of his 10 preemptory challenges to remove or to challenge prospective jurors. He also was successful in having two removed for cause. Only two of those were not related to prior bad treatment by police. And the prior bad treatment by police, I see my time's almost up, really related to the fact that they couldn't dismiss that aspect of their treatment from the incident case, whereas juror number 13 or two, who was seated, said, yes, absolutely, he could separate himself from that. And one other thing I just want to note is that juror 13, the one who we're doing this little window of comparative analysis, was selected for the jury, was called onto the panel at the very, very end of the voir dire. There was really no jurors left. There wasn't anyone left. The final two jurors who, after that panel was picked, automatically became the alternates. There was nobody left. So we had a situation where there was another juror who was in that group with juror number two who was seated, who was also much, much worse, who had a terrible experience, who was going to let her experience affect her decision making as a juror. Obviously, the prosecution wanted to kick her. So I think if we look at the totality of the record, where this one juror that Pellant is trying to compare the situation to came in at the very, very end, and then you look at the objectively race-neutral reasons for the other two jurors, that it was not an unreasonable determination of the facts in this case. All right. Thank you, counsel. Thank you to both counsel. Thank you, Your Honor. The case just argued is submitted for decision by the court. Sir, could you please have a seat? The next case on calendar for argument is United States versus Delgado.
judges: Jones, Rawlinson, Smith M.